STATE of Missouri, Respondent,

v.

James CLEMONS, Appellant.

No. 63794.

Supreme Court of Missouri,
En Banc.

Jan. 11, 1983.

Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Margaret Jones, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERT G. DOWD, Special Judge.

James Clemons (hereinafter defendant) was charged in five separate counts with the first degree murder of Mary A. Kovanda, Theresa Kovanda, Randy Kovanda, Clarence McNeill and Ronald Henderson all in violation of § 565.003 RSMo 1978 by causing them to die in perpetration of the felony of arson. The jury found the defendant guilty of four counts of first degree murder and one count of manslaughter in the death of Ronald Henderson. Defendant was sentenced to concurrent terms of life imprisonment or each of the four counts of first degree murder, § 565.008(2) RSMo 1978, and to a consecutive term of five years imprisonment for the manslaughter conviction, § 565.031 RSMo 1978. He appeals alleging the trial court erred in admitting photographs of the burned victims arguing that they were not necessary to prove any fact in issue, and in submitting a verdict-directing instruction for the manslaughter of Ronald Henderson.

We disagree and affirm the judgment.

In reviewing the record we accept as true all evidence tending to prove defendant guilty together with all reasonable inferences supportive of the verdict. *State v. Brooks,* 618 S.W.2d 22, 23 (Mo.banc 1981). Our function is not to weigh this evidence but to determine whether there was sufficient evidence from which reasonable persons could have found defendant guilty as charged. *State v. Kelly,* 539 S.W.2d 106, 109 (Mo.banc 1976).

On August 29, 1980, five people died in a three alarm fire which occurred at a building on the 2700 block of Troost Avenue in Kansas City. Four of the five victims, the mother, her six-year-old daughter, her 18-month-old son and a 75-year-old man died from smoke inhalation, carbon monoxide intoxication and body burns. The fifth victim, 29-year-old Ronald Henderson died from a severe head injury sustained when he fell from a third floor window after

lowering another person to the windowsill below.

The scenario which led to the fire is as follows: Defendant arrived at the home of his brother, Hollis Clemons at approximately midnight on August 28, 1980 and learned that Hollis had been robbed a week earlier.

Defendant became angry and upset that he had not been told sooner. Defendant questioned his brother about the incident and learned that the robbers had run into a building on the 2700 block of Troost Avenue. Both brothers then went to get some beer, but unable to find an open liquor store they drove to a gasoline station. While Hollis did not see defendant buy gas, he did see him with $2.00 in his hand, saw him get out of the car and open and close the trunk. Defendant then drove by Troost Avenue and asked Hollis which building the robbers ran into. After Hollis showed defendant the building they drove back to Hollis' house where they sat and talked. The two brothers drove to an alley behind the building between 27th and 28th streets where defendant got out of the car, took his shirt off and removed a can from the trunk. He then told Hollis to go home that he would take care of it. Shortly thereafter defendant, his body burned, arrived at Hollis' house and asked that his girlfriend be brought there. Defendant then told Calvin Hartsfield, a friend who was living with Hollis, that he had trapped himself in a fire. The two brothers and the girlfriend agreed to say defendant was burned when pouring gasoline into the carburator of his car. Defendant was admitted to a hospital with burns over 74% of his face, arms, neck, chest, back, thighs and ankles. Defendant admitted at trial that he went into the apartment building with a gasoline can, but denied setting the fire. He admitted he was in the building when it was on fire and was burned when he ran out the rear exit door.

Defendant's first assignment of error is based upon the admission into evidence of photographs of the victims. Defendant objected to these photographs on the grounds that he offered to stipulate to the cause of

death making their admission unnecessary to solve a disputed fact issue in this case, and that they would only serve to inflame the jury.

 The main question here is not only whether the photographs were prejudicial but whether or not they threw any relevant light upon a material matter at issue. Defendant entered a plea of not guilty and the state therefore had the burden of convincing the jury beyond a reasonable doubt as to each and every element of the charged offense which in this case included the fact that the victims died as a result of a fire caused by the defendant. *State v. Villanueva,* 598 S.W.2d 161 (Mo.App.1980); *see State v. Love,* 546 S.W.2d 441, 452 (Mo.App. 1976); *State v. Cummings,* 607 S.W.2d 685 (Mo.1980). While defendant may have offered to stipulate to the cause of death, "the right of the state to offer and to have received evidence which is relevant and material cannot be taken away by an offer for stipulation." *State v. Holmes,* 609 S.W.2d 132, 135 (Mo.banc 1980); *also see State v. Townes,* 522 S.W.2d 22, 25 (Mo.App.1974). As the state must sustain its burden it should not be unduly limited as to the manner of satisfying this quantum of proof. *State v. Villanueva, supra.*

 Admitting the photographs in question was a discretionary act and erroneous only if the ruling resulted in fundamental prejudice and abuse of discretion. *State v. Burnfin,* 606 S.W.2d 629, 630 (Mo.1980). Insofar as the photographs tend to be shocking or gruesome it is because the crime is of that sort. *State v. Duisen,* 428 S.W.2d 169 (Mo.banc 1967). Accurate portrayals will always be inflammatory and the photographs here were not more gruesome than any photographs which would depict persons burned to death. These photographs showed the victims died as a result of the fire, and corroborated the testimony of both the pathologist concerning the victim's wounds, and the police at the scene as to how the bodies were found. The fact that oral testimony described the facts portrayed in the photographs is no reason to reject the demonstrative evidence if it is otherwise relevant. *See State v. Wood,* 596 S.W.2d 394, 403 (Mo.banc 1980).

Because of the superior vantage point occupied by the trial court for balancing the probative value and prejudicial effect of demonstrative evidence we find it was within the trial court's discretion to admit the pictures into evidence. Accordingly, defendant's first point is denied.

Defendant next contends that the jury's failure to convict him of first degree murder in the death of Ronald Henderson is a necessary acquittal of manslaughter, thereby making the submission to the jury of a manslaughter instruction erroneous. Relying on *State v. Martin,* 602 S.W.2d 772 (Mo.App.1980), defendant argues that to acquit of first degree felony murder the jury must have found that he either did not cause the death of Henderson by fire or did not commit arson, either finding necessarily acquitting him of manslaughter. We are not persuaded by this argument for two reasons. Firstly, *Martin,* supra at 779 relied greatly on the reasoning in *State v. Handley,* 585 S.W.2d 458 (Mo.banc 1980) which was overturned in *State v. Wilkerson,* 616 S.W.2d 829 (Mo.banc 1980). In *Wilkerson* this court expressly held that an offense can be a lesser offense of another offense so that a charge of the greater will support a conviction of the lesser.

 Secondly, MAI CR2d 15.00 Supplemental Note on Use Caveat c requires that all lesser included offenses justified by the evidence must be submitted along with the highest grade of homicide. It would have been error for the trial court to have failed to give the instruction on manslaughter. *See State v. Flenoid,* 617 S.W.2d 75 (Mo. banc 1981). Furthermore, we believe there was sufficient evidence for the jury to convict the defendant of manslaughter. The jury did find that defendant caused the deaths of four others by fire and that he did so in committing the felony of arson. This cannot be ignored. An inconsistent verdict among several charges does not require a reversal provided there is sufficient evidence to support the jury's finding of guilt. *State v. Urhahn,* 621 S.W.2d 928, 934 (Mo.

App.1981). The jury's decision not to convict defendant of felony murder is not necessarily evidence that they acquitted him of the felony, but instead could imply a desire by the jury to reduce his punishment for that crime. "Juries frequently convict on some counts and acquit on others not because they are unconvinced of guilt but simply because of compassion and compromise." *State v. Urhahn, supra.* Defendant's manslaughter conviction simply evidences the jury's choice of a lesser punishment in light of the nature of Henderson's death. It would be unreasonable to infer that the jury believed defendant did not commit the felony of arson as the jury did convict him of the other four counts of felony-murder based on the same crime.

Viewing the evidence in the light most favorable to the state we conclude there is sufficient substantial evidence to support the conviction of manslaughter. Defendant's second point is denied and the judgment is affirmed.

RENDLEN, C.J., and WELLIVER, HIGGINS, GUNN and DONNELLY, JJ., and SEILER, Senior Judge, concur.

BILLINGS and BLACKMAR, JJ., not participating because not members of the Court when cause was submitted.