**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Steven R. HOWERTON,
Defendant-Appellant.**

**No. 13735.**

Missouri Court of Appeals,
Southern District,
Division One.

May 23, 1985.

William L. Webster, Atty. Gen., Michael H. Finkelstein, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

David Robards, Joplin, for defendant-appellant.

GREENE, Judge.

Defendant, Steven R. Howerton, was charged in a two-count indictment with the class A felonies of assault in the first degree (§ 565.050 [1]) and armed criminal action (§§ 571.015, 571.017). A jury convicted Howerton on both charges and recommended a 10-year sentence on the assault charge, but was unable to agree on punishment for the armed criminal action offense. Howerton was court-sentenced to 35 years' imprisonment on the armed criminal action conviction to run concurrently to the 10-year sentence assessed on the assault conviction.

On appeal, Howerton first alleges that the trial court erred in not submitting his offered second degree assault instruction to the jury "because it was a permissible construction of the evidence that the injury suffered was merely a 'physical injury' rather than a 'serious physical injury,'" thus mandating the need for an instruction on the less serious form of assault.

■ The controlling factor with respect to submitting a lesser offense in assault cases is whether the facts in evidence are sufficient to arguably show a lack of an essential element of the higher degree of the offense. *State v. Heitman*, 613 S.W.2d 902, 906 (Mo.App.1981).

■ The first count of the indictment charged that, in violation of § 565.050, Howerton knowingly caused serious physical injury to Nancy Bishop by stabbing her with a deadly weapon. Serious physical injury is defined in § 556.061(26) as "physical injury that creates a substantial risk of death ...." A second degree assault submission under § 565.060(2) is required if the evidence shows a person attempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous instrument. Section 556.061(20) defines physical injury as "physical pain, illness, or any impairment of physical condition."

At trial, Howerton testified that at approximately 11:00 p.m., on September 8, 1983, as he was walking home, he passed the C.E. Smith & Associates office building, when he noticed a young woman (Nancy Bishop, with whom Howerton was not acquainted) dressed in grey shorts and shirt talking with three other women seated in an automobile. He proceeded on to his apartment which was approximately one block away, got a knife with a blade approximately three-fourths inches wide and six inches long, went back to the area where he had seen Nancy and hid until her friends left. Nancy worked at C.E. Smith & Associates part-time in the evenings, and was alone in the building. Howerton retrieved the knife for the sole purpose of forcing Nancy to submit to his intended sexual advances. When Nancy re-entered the building, Howerton followed and waited inside until she attempted to leave. As Nancy approached the front door, Howerton grabbed her, stuck the knife close to her face and told her not to scream or he'd kill her. He then forced her to the rear of the building where he demanded she undress and attempted to have sexual intercourse with her. After becoming frustrated at his own physical inability to penetrate her, Howerton plunged the knife to the hilt into Nancy's abdomen and left her lying on the floor, believing she was dead. He then took the knife home and placed it in his trash to be picked up the next morning.

After Howerton departed, Nancy was able to reach a nearby telephone. She called her mother who came to the crime scene and took her to the hospital. Nancy was vomiting bright red blood and complaining of abdominal pain. She underwent immediate emergency surgery which disclosed that the knife had penetrated her abdomen to a depth of six inches, the full length of the blade, and lacerated the junction of her stomach with the first portion of the small intestine, the posterior wall of the duodenum, and the adrenal gland sitting above the right kidney. The knife blade passed "directly by the inferior vena cava" during its thrust. The abdomen had almost a quart of bloody fluid in it when

1. Unless otherwise indicated, all references to statutes are to RSMo 1978, V.A.M.S.

opened during surgery. In the surgeon's opinion, Nancy had lost approximately a quart and a half of blood at the time of surgery and would have died had the emergency surgery not been performed.

If the above related facts do not conclusively show that Howerton knowingly caused a *serious* physical injury to his victim, which created a substantial risk of death, no case ever will. The facts in evidence are totally insufficient to support the submission of a second degree assault charge. Therefore, the trial court was not required to submit a second degree assault instruction. *State v. Brandon,* 606 S.W.2d 784, 787 (Mo.App.1980). *See also State v. Olson,* 636 S.W.2d 318, 321–322 (Mo. banc 1982). The point is denied.

Howerton's remaining point relied on is that the trial court erred in giving the so-called "Kerry Brown" instruction (MAI–CR2d 4.50) because the court did not first determine that the jury was unable to agree on the punishment before resorting to the instruction in question.

The jury retired to deliberate at 3:31 p.m. At 5:55 p.m., the trial court informed counsel that "this jury has been out two hours and twenty-seven minutes" and that he was going to inquire if they had reached a verdict on each count. If verdicts had been reached, then the court announced it intended to give the jury MAI–CR2d 4.50. No objection was made. The jury returned to the courtroom, and the court inquired if a verdict had been reached as to each count, at which time the foreman advised that it had. The court then read to the jury as follows:

> If you unanimously find the defendant guilty as to a particular count, you should fix his punishment as to that count. If, however, after due deliberations, you find the defendant guilty as to, as to a particular count but are unable to agree upon his punishment as to that count, you will complete the verdict form so stating, and in that event the Court will fix the punishment. You must bear in mind that under the law it is the primary duty and responsibility of the

jury to determine whether the, whether the defendant is guilty or not guilty as to any count submitted against the defendant, and if he is guilty as to any count submitted against him, to fix the punishment as to that count.

Thereafter, upon further deliberation, the jury returned with both verdicts, but was unable to agree upon the proper punishment for the armed criminal action charge.

Howerton did not object to the giving of the questioned instruction at trial. In his motion for new trial, the only complaint was that the instruction was given "after only two hours and 30 minutes deliberation." The scope of objection cannot be broadened on appeal. *State v. Williams,* 575 S.W.2d 838, 840 (Mo.App.1978). His only properly preserved objection, which is that not enough time had elapsed before the judge called the jury back into court, has no merit. *See State v. Noble,* 591 S.W.2d 201, 204–206 (Mo.App.1979), and *State v. Nelson,* 597 S.W.2d 250, 252 (Mo. App.1980), where the appellate court found it appropriate to give the questioned instruction after a time lapse comparable to the one here. The point has no merit.

Judgment affirmed.

TITUS, P.J., and FLANIGAN, J., concur.