STATE of Missouri,
Plaintiff–Respondent,

v.

Clenell SANDLES, a/k/a Clendell
Sandles, a/k/a Clendell Sanders,
Defendant–Appellant.

No. 68896.

Supreme Court of Missouri,
En Banc.

Nov. 17, 1987.

Rehearing Denied Dec. 15, 1987.

Janet M. Thompson, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Deborah L. Ground, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HIGGINS, Judge.

In the guilt stage of this case, a jury convicted Clenell Sandles of murder in the first degree under section 565.020.1, RSMo 1986. In the penalty stage of the case, the jury informed the court it was unable to agree upon the punishment and the court assessed and declared the punishment at death, all as authorized by section 565.030, RSMo 1986. Judgment was rendered accordingly.

Appellant presents 18 charges of error in all. Seven of these charges allege instructional error in the penalty stage; one challenges the definition of reasonable doubt given in the guilt stage. The remaining charges are that the trial court erred in refusing to grant a continuance; admitting into evidence numerous photographs and a videotape depicting the victim's condition; refusing defendant's request for a mistrial on the basis of prosecutorial comments in both penalty and guilt stages; refusing defendant's request for mistrial based on an assertion there was no evidence on the essential element of deliberation; excluding venireman Shields who indicated he would not vote for a death penalty under any circumstances; refusing to admit into evidence the death certificates of defendant's parents and hearsay testimony concerning his background; submitting an aggravating circumstance instruction concerning depravity of mind; refusing to impanel a new jury or recuse on the basis of post-trial *ex parte* contact by a juror; imposing the death penalty because it is disproportionate to the punishment imposed in similar cases; and in assessing the death penalty asserting it constitutes cruel and unusual punishment. The judgment is affirmed.

The evidence showed that defendant, a respiratory therapist's aide employed at Oak Hill Hospital in Joplin, Missouri, left work on February 14, 1986, at approximately 11 P.M. He proceeded to the home of one of his coworkers for a few drinks, then to an establishment known as "The Lodge" where he consumed more alcohol. At approximately 2:30 A.M. defendant left The Lodge and proceeded to the home of

Jerry and Betty Tapp, his former employers who owned a janitorial service. Jerry Tapp was away from home cleaning a business establishment. Betty Tapp and the Tapps' 24-year-old mentally retarded daughter, Barbara, were at home. When Jerry Tapp returned home at approximately 6:45 A.M., he discovered his wife's nude, blood-covered body lying on the living room floor. He was told by his daughter "Your wife is dead. 'Doc' killed her with a knife." Mr. Tapp called the police who investigated and photographed the scene. Betty Tapp's nightgown and robe were found on the floor in the kitchen, stained with her blood. Blood stains were found in the kitchen, the living room, the hallway leading from the bedroom, and the bedroom. The bed was blood-soaked.

Defendant, when apprehended by the police the following day, admitted killing Betty Tapp and disclosed that the Tapps called him "Doc." He stated to the police that after entering the house he and Betty Tapp went into the bedroom and engaged in consensual sexual activity, including oral sex and intercourse. He said that for some unknown reason he picked up his knife that he carried for protection and stabbed Betty Tapp once during the sexual activity. The physical evidence reveals that Betty Tapp suffered 20 stab and slash wounds, including the fatal penetration of the right atrium of her heart. A vaginal swab revealed indications of semen.

This is the first appeal from a judgment of conviction and sentence to death for murder in the first degree since the public policy of this state was changed to direct the court, in the penalty stage, to assess and declare the punishment if the jury is unable to decide or agree upon the punishment. Section 565.030, RSMo 1986 (L.1983 S.B. 276, A.L.1984 S.B. 448, section A), effective 10–1–84.

Section 565.030.4(4) is specific in its direction that "[I]f the trier is a jury it shall be instructed before the case is submitted that if it is unable to decide or agree upon the punishment the court shall assess and declare the punishment at life imprisonment without probation, parole, or release except by act of the governor or death." The court followed this directive by so instructing the jury and by so acting when the jury was unable to agree upon the punishment. Validity of the statutory mandate is not in question.

■ Appellant's principal contention is that this Court must set his death sentence aside and resentence him to life imprisonment or remand the case for retrial of the punishment hearing. Section 565.035.5(2), (3), RSMo 1986. Appellant argues that if fully instructed[1] in the penalty stage, it is possible the jury might have reached agree-

---

1. Appellant argues that the trial court erred in submitting the penalty phase instructions for the following reasons:

(1) Appellant was prejudiced because of two prior convictions which were given in an instruction on statutory aggravating circumstances and duplicated in an instruction on non-statutory aggravating circumstances. This Court rejected this argument in *State v. Zeitvogel*, 707 S.W.2d 365 (Mo. banc 1986), *cert. denied* ——— U.S. ———, 107 S.Ct. 243, 93 L.Ed.2d 168 (1986).

(2) There was insufficient evidence to support the submission of Instruction 15 which asks the jury to determine if the murder occurred while the appellant was engaged in the perpetration of a rape.

(3) The trial court erred in failing to submit an instruction defining "forcible compulsion," a phrase submitted in Instruction 15.

(4) That the statutory aggravating circumstance asking the jury if the murder was outrageously or wantonly vile, inhuman, or involved depravity of mind, given pursuant to section 565.032.2(7), RSMo 1986, fails to narrow the class of persons eligible for the death penalty and therefore is in violation of the eighth amendment to the U.S. Constitution.

(5) The submission of non-statutory aggravating circumstances promotes "standardless discretion" in violation of the proscription in the eighth amendment against cruel and unusual punishment and appellant's right to due process of law under the fifth and fourteenth amendment to the U.S. Constitution and article I, section 10 of the Missouri Constitution.

(6) The instruction patterned after MAI–CR 2d 13.49 erroneously omitted the two paragraphs which inform the jury that it is the jury's duty alone to render a verdict on punishment and further informs the jury about the order of argument.

(7) The instructions patterned after MAI–CR 2d 13.40, 13.42 and 13.48 are mutually inconsistent and misleading and allowed the jury to abdicate its sentencing responsibility to the court, notwithstanding that it may not have found an aggravating circumstance.

ment and not have left the punishment to the trial judge. Specifically appellant complains of the omission of two paragraphs of MAI–CR 2d 13.49, given as Instruction # 21, reading:

> It is your duty, and your duty alone, to render such verdict under the law and the evidence concerning the punishment to be imposed as in your reason and conscience is true and just.[2]

> The state's attorney must open the argument. The defendant's attorney may then make his argument. The state's attorney may then reply. No further argument is permitted by either side.[3]

In the penalty stage of this case Instruction # 13, patterned on MAI–CR 2d 13.31, had already told the jury of its responsibility:

> You found the defendant guilty of murder in the first degree. *At this stage of the trial it will be your duty to determine within the limits presented by law the punishment which must be imposed for that offense;*

and similarly, Instruction # 20, patterned after MAI–CR 2d 13.48, had already told the jury:

> If, after due deliberation, you are unable to agree upon the punishment, your foreman will sign the verdict form so stating. In such case, the court will fix the defendant's punishment at death or at imprisonment for life by the Division of Corrections without eligibility for probation or parole. *You will bear in mind, however, that under the law it is the primary duty and responsibility of the jury to fix the punishment.*

The trial court gave, in Instruction # 20, the instruction required by the legislature that triggers the court's duty to assess the punishment if the jury is unable to decide or agree on punishment. The language employed in the first part of Instruction # 20 is that of MAI–CR 2d 13.48 and is virtually identical to that previously quoted from section 565.030.4(4), RSMo 1986. The trial court thus did exactly what the legis-

lature directed it to do when confronted with the circumstances of this case.

The established principles which govern review of an alleged error of omission are that instructions must be considered together and that absence of language in a particular instruction does not prejudice the defendant if the subject matter is covered and provided elsewhere in the instruction. *State v. Holt,* 592 S.W.2d 759, 776 (Mo. banc 1980). *See also State v. White,* 622 S.W.2d 939, 943–4 (Mo. banc 1981); *State v. Noble,* 591 S.W.2d 201 (Mo.App. 1980). In *Holt* the court omitted from the designated instruction, perhaps the most important of all in a criminal case, that the presumption of innocence places upon the State the burden of proving beyond a reasonable doubt that the defendant is guilty. Appellant argued that this left the jury without instruction on the fundamental element of any criminal case. The Court denied the argument because the jury was elsewhere instructed on the element of reasonable doubt. The same is true of the alleged error in the present case because the allegedly omitted language was twice submitted to the jury in Instructions 13 and 20.

The record in this case includes the taped arguments made to this Court by counsel. Appellant's counsel acknowledged, candidly and appropriately, that it would take "incredible speculation" to find that the instructional circumstance in this case caused the jury to be unable to decide the punishment. Appellant's point on the omission asserts only that it might have caused the jury to be unable to agree. This speculative argument disregards that the jury was fully and appropriately instructed, particularly on its "primary duty and responsibility to fix punishment." Missouri courts properly refuse to find instructions prejudicially erroneous if the alleged errors are "no more than speculation." *State v. Wood,* 662 S.W.2d 876, 878 (Mo.App.1983);

---

**2.** This paragraph is suspect in view of the language of shared responsibility employed by the legislature in section 565.030.4(4), RSMo 1986.

**3.** The point on the omission of the order of argument has been abandoned.

*State v. Hunter,* 586 S.W.2d 345, 348 (Mo. banc 1979).

Four of appellant's allegations of instructional error in the penalty stage are plain error assertions. There is no allegation that the punishment was not within the statutory limit or that the trial court could not have imposed the death penalty in these circumstances. Under the statute the judge or jury could assess punishment and the appellant fails to show prejudice from the judge's assessment of punishment. Thus, no manifest injustice is demonstrated which would require reversal under the plain error rule.

■ The Court also rules against appellant on the alleged errors in the penalty stage instructions which were preserved for review. Appellant asserts that certain instructions were mutually inconsistent, misled the jury and led to arbitrary and capricious sentencing because they first required that the jury assess punishment at life imprisonment if it did not find beyond a reasonable doubt the existence of at least one aggravating circumstance. Appellant alleges the instructions then allowed the jury to abdicate its responsibility to assess punishment, notwithstanding that the jury may not have made the finding regarding an aggravating circumstance that would preliminarily allow the consideration of the death penalty.

Appellant's argument fails because instructions must be considered together. *Holt,* 592 S.W.2d at 776. When considered together there is nothing misleading or inconsistent about the instructions. They properly followed MAI–CR 2d 13.40 in requiring the jury first, in Instruction 15, to find at least one aggravating circumstance beyond a reasonable doubt or return a verdict fixing punishment at life imprisonment. The jury must have made this preliminary determination because the record shows it considered the death penalty. Second, in Instruction 17 the jury must find unanimously beyond a reasonable doubt that the aggravating circumstances warrant the imposition of the death penalty (MAI–CR 2d 13.42). And MAI–CR 2d 13.-48, given in Instruction 20, which directs the jury to inform the court if it is unable to agree upon punishment and permits the court to fix punishment, is not inconsistent with MAI–CR 2d 13.40 and MAI–CR 2d 13.42. The jury could determine that sufficient aggravating circumstances exist to warrant imposition of the death penalty yet still be unable to reach a unanimous verdict on whether to impose the death penalty. Defendant requested instructions on mitigating circumstances, some of which were given to the jury in Instruction # 18, hoping to bring about this very result. These instructions when considered together are not inconsistent and provide the necessary guidance to allow the jury to defer punishment to the court only after it has failed to agree. The instructions properly followed Missouri Approved Instructions, and defendant was not prejudiced by their submission. Appellant's allegations of prejudice are based on no more than speculation because the trial court rather than the jury ultimately assessed punishment. *Wood,* 662 S.W.2d at 878.

■ Appellant also preserved his objection regarding penalty stage Instruction # 15, which failed to define "forcible compulsion," a term used in instructing the jury on rape as an aggravating circumstance. The Court rejects appellant's arguments. Any finding of prejudice would be based on no more than speculation because the court, rather than the jury, assessed punishment. *Wood,* 662 S.W.2d at 878.

The failure to define forcible compulsion has been held to be error in cases where the charge was false imprisonment. *State v. Rodgers,* 641 S.W.2d 83 (Mo. banc 1982). However, appellant has cited no cases where failing to define the term "forcible compulsion" contained in an instruction on aggravating circumstances is error. The common meaning of the term forcible compulsion implies the use of physical force to lead a person to act against his will. Speculation would need be indulged to find that the failure to define forcible compulsion so confused the jury that it was unable to agree on punishment. The record in this case refutes such an argument.

■ Similarly, defendant was not prejudiced in the penalty stage by the trial court's rejection of evidence of mitigating circumstances in the form of unauthenticated death certificates of defendant's parents and hearsay testimony concerning his childhood. First, the evidence was inadmissable, of questionable relevance, and its admissibility is within the court's discretion, *State v. Malone*, 694 S.W.2d 723, 727 (Mo. banc 1985), *cert. denied*, 476 U.S. 1165, 106 S.Ct. 2292, 90 L.Ed.2d 733; and no abuse of discretion has been demonstrated. Second, any finding of prejudice would be based on no more than speculation. *Wood*, 662 S.W.2d at 878. Last, appellant relies on an assertion of plain error, and the rule requires reversal only if a manifest injustice occurs. *Noble*, 591 S.W.2d 201. No manifest injustice has been demonstrated in the refusal of the proffered evidence.

Appellant also charges error to giving MAI–CR 2d 1.02 and 2.20 in the guilt stage which define proof beyond a reasonable doubt as proof that leaves you "firmly convinced" of defendant's guilt. He asserts the definition dilutes the State's burden of proof. This Court recently ruled that the "firmly convinced" language properly instructs the jury upon the standard to use in determining defendant's guilt or innocence. *State v. Guinan*, 732 S.W.2d 174, 177 (Mo. banc 1987).

■ Appellant alleges that the trial court abused its discretion in failing to grant a continuance thereby denying him due process of law. He contends additional time was needed for further consultation with his psychologist and psychiatrist, to more fully develop evidence in mitigation of punishment, and to determine if he was capable of deliberating when he killed Betty Tapp. He also asserts that because he attempted to "commit suicide" prior to the suppression hearing and was brought to the hearing immediately after his stomach was pumped, his ability to assist in his defense was impaired.

The record demonstrates that defendant was aware of his surroundings, fully understood the nature of the proceeding, and may have taken the medication to avoid his court date. He told the trial court that "I'm not trying to deny that I have an understanding of what's going on. You know, I have a full understanding of what's going on." The court denied the continuance, and said it "could not let a defendant control when he did or didn't come to the court by taking medication." The determination of whether a defendant is physically able to proceed with a hearing or trial is within the discretion of the trial court. *State v. Walters*, 29 S.W.2d 89, 90 (Mo.1930); *State v. Hill*, 530 S.W.2d 50, 51 (Mo.App.1975). The record shows no abuse of discretion.

■ Nor did the trial court abuse its discretion in refusing to grant motions for continuances filed September 25 and October 2 because there was no showing that a continuance would help in the preparation of the case. Sandles had over 5 months to prepare for trial and had been granted two prior continuances which had already delayed trial 47 days. He called no witnesses who allegedly needed additional time to prepare and failed to present for the record any testimony anticipated from them.

Grant or denial of a continuance rests within the sound discretion of the trial court. *State v. Nave*, 694 S.W.2d 729, 735 (Mo. banc 1985), *cert. denied*, 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 901 (1985); *State v. Williams*, 652 S.W.2d 102, 108 (Mo. banc 1983). The trial court's ruling will not be disturbed by an appellate court unless there is a strong showing of abuse of discretion, *State v. Boliek*, 706 S.W.2d 847, 850 (Mo. banc 1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 302, 93 L.Ed.2d 276 (1986); *Williams*, 652 S.W.2d at 108, and the burden of showing prejudice resulting from the denial of a continuance is on the party which requested it. *Nave*, 694 S.W.2d at 735. Appellant does not demonstrate an abuse of discretion.

■ Appellant alleges that the trial court abused its discretion in overruling defendant's objection and motion for mistrial in response to the prosecuting attorney's closing argument that there was "no way of knowing other than this evidence

... precisely what occurred in the early morning hours of February 15 at the Tapp residence" since "Betty Jean Tapp is dead" and "Barbara Tapp ... as you've seen, is a mentally retarded young lady." Appellant argues that these comments deprived him of his right not to testify and his right to a fair and impartial jury as guaranteed by the fifth, sixth and fourteenth amendments to the United States Constitution and article I, section 18(a), 19 and 22 of the Missouri Constitution.

Appellant cites *State v. Williams*, 673 S.W.2d 32 (Mo. banc 1984), and *State v. Cokes*, 682 S.W.2d 59 (Mo.App.1984). However, the remarks in both of those cases went beyond those in this case and either directly or indirectly alluded to the defendant's failure to testify. In *Williams* the prosecutor said, "There is no eyewitness as to what happened in that bathroom that the State can produce for you today. There's only two people back there that knows exactly what happened and can tell you." *Williams*, 673 S.W.2d at 35. The court said it would have been error had the defendant's objection not been sustained. *Id.* In *Cokes* the prosecutor's statement that "the defendant has the right not to testify," was held to be reversible error. *Cokes*, 682 S.W.2d at 60.

Because of the superior position of the trial court to observe challenged remarks and to determine what, if any, prejudicial effect they may have upon a jury, this Court has held that it will disturb the trial court's ruling only where the references are "direct and certain." *State v. Robinson*, 641 S.W.2d 423, 426 (Mo. banc 1982). The comment in *Cokes* was obviously direct and thus *Cokes* is distinguishable from this case.

Nor do the comments in this case rise to the level of an indirect reference to appellant's right not to testify. "To constitute error an indirect reference to a defendant's decision not to testify, must, when viewed in context, naturally and necessarily cause the jury to infer that the comment referred to the accused's failure to testify." *State v. Johnson*, 702 S.W.2d 65, 73 (Mo. banc 1985). The comments, condemned by the court in *Williams* obviously indirectly referred to the accused's failure to testify.

In this case the prosecution, immediately following the challenged remarks, explained that "Clenell Sandles has told us, through the police officers, his version of what took place." In the context of this case, the jury would not necessarily infer that the comments referred to the accused's failure to testify. They were more likely intended to confine the jury to the evidence in the case rather than to engage in speculation as to what happened.

■ Nor did the trial court abuse its discretion in overruling defendant's motion for mistrial on the basis of the prosecutor's comments during closing argument of the guilt stage that "If this isn't a first degree murder case, Gentlemen, we are never going to see a first degree murder case." These comments were in direct response to defense counsel's argument that this was not a first degree murder case and that second degree murder was the appropriate charge. The trial court's rulings in allowing or rejecting argument of counsel are reversible only for an abuse of discretion where the argument is plainly unwarranted. *State v. Armbruster*, 641 S.W.2d 763, 766 (Mo.1982); *State v. McDonald*, 661 S.W.2d 497 (Mo. banc 1983), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985). Appellant demonstrates no abuse of discretion.

■ Appellant also argues that the prosecutor made impermissible arguments during the penalty stage in arguing that the death penalty would serve as a signal to deter future crimes in the community. There is nothing improper about such an argument. *State v. Newlon*, 627 S.W.2d 606 (Mo. banc 1982), *cert. denied*, 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982). The trial court sustained defendant's objection to the extent that the prosecutor's argument would be limited to general deterrence and not refer to deterrence of this defendant. The prosecutor complied with the imposed limitation, and there was no abuse of discretion.

Appellant contends that a new trial is necessary because the trial court erred in

admitting 28 photographs and a videotape depicting the victim's condition and the victim's home. He asserts that any probative value the photographs may have had was far outweighed by their prejudicial effect in that the photographs and videotape were cumulative, gruesome and inflammatory and not relevant to any material issue.

▐ Because defendant stated he had no objection to the introduction of 17 of the questioned photographs, their introduction is limited to plain error review. *State v. Mallet,* 732 S.W.2d 527, 538 (Mo. banc 1987). Under the plain error rule, the Court will set aside a lower court ruling only when it affects the rights of the accused to the extent of manifest injustice or miscarriage of justice if left uncorrected. *State v. Valentine,* 646 S.W.2d 729 (Mo. 1983). In this situation the appellant has the burden of establishing manifest injustice. *State v. Groves,* 646 S.W.2d 82, 83 (Mo. banc 1983). Appellant has not carried his burden. Photographs are relevant and are admissible to show the identity of the victim, the cause of death, and the nature and extent of wounds which were inflicted upon the victim. *State v. Guinan,* 665 S.W.2d 325, 331 (Mo. banc 1984), *cert. denied,* 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed. 2d 156 (1984).

▐ The Court also rejects appellant's contention that the trial court abused its discretion in admitting into evidence over appellant's objection the remaining photographs and the video tape. The trial court admitted only one photo during the guilt stage and the remaining photos and the video were not admitted until the penalty stage. Thus the jury was not overly exposed to these photographs when it returned a guilty verdict. The photos and the video tape were relevant and properly admissible during the penalty stage to show the number of wounds, their vicious nature, and that the murder involved depravity of mind. The trial court is given broad discretion in the admission of photographs. *Guinan,* 665 S.W.2d at 331. No abuse of discretion is shown.

Appellant's claim that the photographs were cumulative is also rejected. Each photo that was admitted into evidence was independently relevant and either depicted a separate wound or showed blood spatters in various areas of the house. The videotape was an effective method of showing the entire view of the crime scene as it was investigated and the condition and location in which the victim was found.

Appellant's claim that the photographs were prejudicial because they are gruesome is also rejected. The State cannot be unduly limited as to the matter of satisfying its quantum of proof, *State v. Clemons,* 643 S.W.2d 803, 805 (Mo. banc 1983). Insofar as the photographs tend to be shocking or gruesome, it is because the crime depicted is of that sort. *Clemons,* 643 S.W.2d at 805. Because of the superior position of the trial court for balancing the probative value and prejudicial effect, it is within the trial court's discretion to admit the photographs into evidence. *Id.* No abuse of that discretion has been demonstrated.

▐ Appellant argues that the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence because there was no evidence on the essential element of deliberation required for a conviction of first degree murder. Section 565.020, RSMo 1986. In considering whether the State has proved the element of deliberation, this Court accepts as true all evidence and inferences supporting the verdict and disregards all evidence and inferences to the contrary. *State v. Strickland,* 609 S.W.2d 392, 395 (Mo. banc 1980); *State v. Davis,* 653 S.W.2d 167 (Mo. banc 1983). Deliberation is found when an act is performed with a cool and deliberate state of mind. *State v. Craig,* 642 S.W.2d 98, 101 (Mo. banc 1982). A finding of deliberation does not depend upon the time involved, but rather upon the inferences reasonably drawn from the evidence and circumstances. *Davis,* 653 S.W.2d at 172.

▐ The State produced sufficient evidence to permit a finding of deliberation. In addition to the evidence showing a strange time for a visit to the victim's home, the Tapps' home showed signs of a

prolonged struggle and such has been held to be evidence of deliberation. *State v. LaRette*, 648 S.W.2d 96 (Mo. banc 1983), *cert. denied*, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983). The repeated blows to the victim also provided evidence of deliberation. *State v. Roberts*, 709 S.W.2d 857, 863 (Mo. banc 1986), *cert. denied*, — U.S. ——, 107 S.Ct. 427, 93 L.Ed.2d 378 (1986); *see also Davis*, 653 S.W.2d at 172. Because the evidence shows that defendant had every opportunity to consider his actions, the jury could properly have found deliberation.

■ Appellant charges that the trial court abused its discretion in excusing Venireman Shields for cause on its own motion. Although Mr. Shields stated he would not consider a sentence of death under any circumstances because he did not believe in the death penalty, appellant argues that article I, section 5 of the Missouri Constitution would preclude the court from excusing Venireman Shields if his opposition to the death penalty was based on religious beliefs. Appellant's argument fails because Venireman Shields was excused, not for his religious beliefs, but because he indicated that he would not follow the laws of this State. *State v. Mathenia*, 702 S.W.2d 840, 844 (Mo. banc 1986), *cert. denied*, — U.S. ——, 106 S.Ct. 3286, 91 L.Ed.2d 574 (1986). *See also State v. Chambers*, 714 S.W.2d 527, 532 (Mo. banc 1986); *State v. Driscoll*, 711 S.W.2d 512, 517 (Mo. banc 1986), *cert. denied*, — U.S. ——, 107 S.Ct. 329, 93 L.Ed.2d 301 (1986).

■ A related argument is that the trial court improperly precluded defense counsel from asking any questions of Mr. Shields. Appellant argues that under section 546.130, RSMo 1986, it was necessary to question Shields to determine if his opinions precluded him from imposing the death sentence. Section 546.130, RSMo, provides that persons are ineligible to serve as jurors if their opinions are "such as to preclude them from finding any defendant guilty of an offense punishable with death." In other words, appellant argues that Venireman Shields may have been able to impose the death penalty even though he acknowledged that he "absolutely could never under any circumstances be a part of a jury that gave a sentence of death." In these circumstances it was not essential that defense counsel be permitted to further question Venireman Shields. There is no abuse of discretion in excusing persons from the jury panel who are unable to follow the law on punishment. *State v. Preston*, 673 S.W.2d 1, 8–9 (Mo. banc 1984), *cert. denied*, 469 U.S. 893, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984); *Mathenia*, 702 S.W.2d 840.

■ Appellant seeks reversal and remand for a new penalty stage trial based on a recital that the jury foreman contacted the judge following the conclusion of the trial to explain that the jury was deadlocked 11–1 in the penalty stage because one of the jurors refused to vote for death penalty under any circumstances. Appellant asserts that his due process right to an unbiased and unprejudiced tribunal was denied because the trial court either abdicated its responsibility in ruling on the new trial motion by attempting to fulfill what it believed to be the jury's ultimate desire in sentencing appellant to death or that the court's decision on the new trial was tainted by the juror's comments. Appellant points to two rulings on his motion for new trial which were allegedly influenced by the trial court's communication with the juror. Specifically, he alleges that a new trial was necessary because the verdict form did not require the jury to indicate that it had found at least one aggravating circumstance and the last two paragraphs were erroneously omitted from Instruction 21 taken from MAI–CR 2d 13.49 (now MAI–CR 3d 313.49). The omitted paragraphs admonish the jury that it is their duty to assess punishment and explains the order of argument.

Because the court overruled the new trial motion on the record independent of the comments of the juror, appellant was not denied due process. Regarding the jury's duty to render the verdict, the omitted portion of the instruction was adequately presented in other instructions and therefore the appellant was not prejudiced by the omission, a matter considered in detail

*supra.* The order of argument instruction, omitted in the penalty stage, was given in the guilt stage and the penalty stage argument proceeded properly. The absence of the instruction in the penalty stage did not prejudice the defendant. Concerning the verdict form, the instructions did require the jury to find at least one aggravating circumstance or return a sentence of life imprisonment. There is no reason to assume the jury did not follow these instructions. Thus, there was no demonstration by way of any of appellant's assertions and arguments that the trial court abandoned its role of impartiality, and consequently there was no reason for the trial judge to recuse and impanel a second jury.

■ Appellant asserts that the death sentence in this case should be set aside by this Court in its exercise of independent review under section 565.035.3(3), RSMo Cum.Supp. (1984), because it is excessive and disproportionate to the punishment imposed in similar cases thereby violating the eighth and fourteenth amendments to the U.S. Constitution. Appellant offers four arguments in support of this assertion. First, he argues that the facts of this case are less egregious than those in the capital murder cases in which the defendant was given a life sentence. However, the death penalty has been affirmed in similar circumstances where a relatively young woman is murdered after a prolonged attack in which multiple wounds were inflicted as she fought for her life. *State v. LaRette,* 648 S.W.2d 96 (Mo. banc 1983). *State v. Stokes,* 638 S.W.2d 715 (Mo. banc 1982), *cert. denied,* 460 U.S. 1017, 103 S.Ct. 1263, 75 L.Ed.2d 488 (1983); *State v. Rodden,* 728 S.W.2d 212 (Mo. banc 1987).

■ Second, appellant challenges two of the four statutory aggravating circumstances found by the court, alleging there was not sufficient evidence that the murder occurred during the commission of a rape or involved a depravity of mind. The State introduced records of the defendant's convictions for aggravated kidnapping and robbery by assault which were adequate to support the trial court's finding of aggravating circumstances, and there was evidence for the court to find all four aggravating circumstances.

This Court has indicated that the following factors are to be considered in finding depravity of mind as used in 565.032.2(7), RSMo 1986: the mental state of the defendant; the infliction of physical or psychological torture upon the victim as when the victim has a substantial period of time before death to anticipate and reflect upon it; the brutality of the defendant's conduct; mutilation of the body after death; absence of any motive; absence of defendant's remorse and the nature of the crime. *State v. Preston,* 673 S.W.2d at 11. Many of these factors are present in this case. The physical evidence discloses that Mrs. Tapp fought a prolonged battle for her life. Her nightgown and robe were discovered in the kitchen where various articles were spattered with her blood. The walls and a dresser in the bedroom were spattered with her blood and the bed was blood-soaked. The wall in the hallway leading from the bedroom was smeared with bloody handmarks. Mrs. Tapp suffered 20 stab wounds including a "defense wound" in her hand as she attempted to ward off the defendant's knife attack. After the attack, defendant told the officers he watched Mrs. Tapp leave the bedroom and go to the living room where Mrs. Tapp's body was found, holding the telephone receiver. That this gruesome scene was acted out in front of Mrs. Tapp's mentally retarded 24-year-old daughter is further evidence that the defendant acted with depravity of mind. The evidence was also sufficient to permit the trier of fact to find the murder occurred during the perpetration of a rape. The appellant admitted engaging in sexual intercourse with Betty Tapp, and the State produced evidence of forcible compulsion. The court was not obligated to believe appellant's story that the intercourse was consensual and that he stabbed Betty Tapp for some unknown reason.

■ Finally, appellant alleges that his death sentence is disproportionately severe because of the presence of the following mitigating circumstances: 1) his emotional disturbance over the death of a patient at work on the evening of the murder; 2) his consumption of an unknown quantity of alcohol on the night of the murder and his

history of drug and alcohol abuse; 3) his childhood spent in poverty with his grandmother who was verbally abusive; 4) his age (31 years); 5) his remorse; 6) his separation from his natural parents; 7) his sensitivity as a person with reverence for life and other human beings. The trial court, as required, balanced these mitigating circumstances against the aggravating circumstances and reasonably could have held as it did.

The Court also rules against appellant on his final argument that the death penalty constitutes cruel and unusual punishment and is unconstitutional. *See State v. Newlon,* 627 S.W.2d at 611–613, and *State v. Driscoll,* 711 S.W.2d at 517.

The judgment of conviction and sentence of death for murder in the first degree is affirmed.

DONNELLY, WELLIVER and RENDLEN, JJ., concur.

BILLINGS, C.J., and ROBERTSON, J., concur in separate opinions filed.

BLACKMAR, J., concurs in part and dissents in part in separate opinion filed.

BILLINGS, Chief Justice, concurring.

I concur in the principal opinion.

I write to suggest that our learned colleague, Blackmar, J., in part II of his separate opinion, concurring in part and dissenting in part, strays from the statutory field, crosses the creek of judicial restraint, and roams legislative pastures.

Trial judges should continue to follow the law, as was done in this case. Any change in the public policy of this State as to the death penalty should come from the General Assembly.

ROBERTSON, Judge, concurring.

I concur in the majority opinion. I write separately because, in my view, MAI–CR 2d 13.49 and Section 565.030.4(4) are at odds with each other. Far from being erroneous, the trial judge's instructions in the penalty phase are compelled by the language of the statute.

The language omitted from MAI–CR 2d 13.49 told the jury "[i]t is your duty, and

yours alone" to assess punishment. Section 565.030.4(4) requires that the jury be instructed *prior to the submission of the case,* "that if it is unable to decide or agree upon the punishment[,] the court shall assess and declare the punishment at life imprisonment ... or death." Instruction 20 so stated.

MAI–CR 2d 13.49 was adopted prior to the amendments to Section 565.030.4(4). Section 565.030.4(4) now requires that the jury be told that the trial judge will assess punishment if the jury cannot. The duty to assess punishment is no longer the jury's alone. The jury bears the primary responsibility to assess punishment. The trial court's shares that obligation on a contingent basis. To the extent that MAI–CR 2d 13.49 tells the jury that it bear the punishment burden alone, the instruction is inaccurate. The trial court cannot be convicted of error for omitting a paragraph from an instruction which is contrary to Section 565.030.4(4).

BLACKMAR, Judge, concurring in part and dissenting in part.

This is the first death sentence case to reach us since the amendment to Section 565.030, RSMo 1986, which authorizes the court to pronounce a sentence of death or life imprisonment in first degree murder cases when the jury makes the findings necessary to the death sentence *in pectore,* but does not announce them, and then reports that it is unable to agree on the sentence. I cannot concur in the sentence, for the reasons set out in Part I of this opinion.

I.

The instructions omitted the following two paragraphs of MAI–CR 2d 13.49:

It is your duty, and yours alone, to render such verdict under the law and the evidence concerning the punishment to be imposed as in your reason and conscience is true and just.

The state's attorney must open the argument. The defendant's attorney may then make his argument. The state's attorney may then reply. No further argument is permitted by either side.

The principal opinion holds that the submission conforms to the statute and that the omission of these paragraphs could not be found to be "prejudicial." Judge Robertson suggests that MAI–CR 2d 13.49 conflicts with the governing statute, Section 565.030.4(4).

I am not fully persuaded. It has always been the sense of our death penalty statutes, following the revisions designed to comply with *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), *reh'g den.* 429 U.S. 875, 97 S.Ct. 197, 50 L.Ed.2d 158 (1976), that the jury has the duty of determining the sentence. The first of the omitted paragraphs was designed to impress this duty on the jury, by emphatic language. The principal opinion suggests that the jury was adequately advised in the other instructions that it had the responsibility of determining the sentence. I would opt for the extra caution, so long as 13.49 is in force. I am not able to say that the jury would have been unable to agree on the sentence if it had been further cautioned about its duty in the manner specified in the patterns.

I believe that cases in which the death sentence is sought should proceed by the book. I would provide an emphatic lesson to trial judges and prosecutors. Death sentence cases, to my way of thinking, are different from other cases. In *State v. Steward*, 734 S.W.2d 821 (Mo. banc 1987), the Court recently reversed a conviction of first degree murder and life sentence because of remarks by the trial court, not objected to, in which prejudice was highly speculative. I think this case is somewhat similar.

I would distinguish *State v. Noble*, 591 S.W.2d 201 (Mo.App.1979) because the death sentence was not involved.

## II.

I agree that the instructions are minimally sufficient, if read by an English teacher, to tell the jury that it must return a life sentence unless it unanimously finds beyond reasonable doubt: (1) at least one of the assigned statutory aggravating circumstances; (2) that the aggravating circumstances found warrant the imposition of the death sentence; and (3) that the aggravating circumstances are not outweighed by mitigating circumstances.

I am not at all confident that juries will go through this elaborate procedure if disagreement appears. The line of least resistance would be simply to report failure to agree. There is no provision for polling to make sure that the jury has made the essential findings.

The verdict forms for future cases should be revised so that the jury which reports inability to agree on the sentence in a capital case should return into court the aggravating circumstances which it has found. There would be no conceivable harm to the prosecution in such a procedure, and such a return would be a guarantee of the integrity of the verdict.

I would agree that the case is factually comparable to others in which a death sentence has been upheld, even though there are more aggravated cases in which the jury did not decree a sentence of death. I would affirm the conviction but would vacate the sentence and remand for such further proceedings as the prosecutor may elect.