**STATE of Missouri, Plaintiff–Respondent,**

v.

**Daniel Paul SKIPPER, Defendant–Appellant.**

**No. 24618.**

Missouri Court of Appeals, Southern District, Division Two.

April 4, 2003.

Nancy A. McKerrow, Columbus, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Karen L. Kramer, Assistant Attorney General, Jefferson City, for respondent.

JOHN E. PARRISH, Judge.

Daniel Paul Skipper (defendant) was convicted, following a jury trial, of statuto-

ry rape in the first degree, § 566.032,[1] and statutory sodomy in the first degree, § 566.062. He was charged as, and found to be, a prior offender. *See* § 558.016.2. This court affirms.

For purposes of its review, this court accepts as true evidence favorable to the verdict together with all favorable inferences. Contrary evidence and inferences are disregarded. *State v. Bigsby*, 891 S.W.2d 160, 162 (Mo.App.1995); *State v. Vincent*, 785 S.W.2d 805, 807 (Mo.App. 1990).

N.H. met defendant at a bus station in Springfield, Missouri. She gave defendant her telephone number. That evening defendant called. He asked N.H. to come to Mt. Vernon, Missouri, to visit him. Defendant lived in a trailer. He gave N.H. the address of the trailer. She went to Mt. Vernon but could not find the address he had given. N.H. returned to Springfield. Later that evening defendant called again. N.H. agreed to again go to Mt. Vernon and meet defendant at a grocery store.

N.H. met defendant in Mt. Vernon. They went to defendant's trailer. Defendant's sons, ages six and four, were at the trailer. N.H. spent the night there. The next day defendant talked of marriage. N.H. told defendant she was in the process of getting a divorce; that she could not marry him. She agreed to move in with him.

N.H. has two daughters. They had been visiting their father. The following day, January 7, 2000, N.H.'s daughters, S.H. and A.H., age two and seven, moved in with N.H., defendant and defendant's two sons. The older daughter, A.H., was in the second grade. N.H. enrolled her in school in Mt. Vernon.

Defendant's trailer had two bedrooms. Defendant's boys slept in one. The second bedroom was used for storage. Defendant, N.H., and her two girls slept on pads on the living room floor.

N.H. testified that on January 26, 2000, she woke up; that she saw defendant's fingers in A.H.'s vagina. She said she tried to pull defendant away; that he stopped.

N.H. testified that on February 3, 2000, she was changing S.H.'s diaper; that when she pulled the child's diaper off, defendant pulled out his penis; that "[h]e put the head of it in [S.H.'s] vagina." Defendant's penis was erect. After defendant placed the head of his penis in S.H.'s vagina, "[h]e went up and down." N.H. was asked if defendant indicated why he did this to her two-year-old daughter. She answered, "He—He wanted to do it to little girls."

Defendant argues three points on appeal. Points I and II complain that the trial court erred in overruling objections to testimony by Kathy Carr, who interviewed A.H., and admitting in evidence a videotaped recording of the interview (Point I), and in permitting testimony by Amanda Pope about statements A.H. made to her and that her observation of A.H. was that the child was "rough" and dirty (Point II). Point III contends the trial court erred in submitting the verdict-directing instruction for Count II, Instruction No. 7, to the jury.

Point I contends the trial court erred in permitting Kathy Carr to testify about her interview with A.H. and in admitting the videotaped recording of the interview because "both the videotape and Carr's testimony duplicated and bolstered the trial testimony of [A.H.] so that the jury heard the victim's testimony three times."

Defendant relies on principles enunciated in *State v. Seever*, 733 S.W.2d 438 (Mo.

---

**1.** References to statutes are to RSMo 1994    unless stated otherwise.

banc 1987), in support of Point I. In *Seever* a videotaped statement was admitted in evidence and played to the jury. The video was a statement by an eight-year-old child alleged to have been subjected to sexual contact. After the videotaped statement was played to the jury, the child testified. The court found that "[t]he statement and the testimony covered the same precise ground." *Id.* at 441. *Seever* held this was "improper enhancement and rehabilitation." *Id. Seever* concluded that "[t]his bolstering [was] a departure from the normal course of trial proceedings." *Id.* The court concluded it could not say there was no prejudice. It reversed the judgment and remanded the case for a new trial.

Defendant acknowledges that cases subsequent to *Seever* have questioned its holding and distinguished their facts from those in *Seever*. Furthermore, the statute pursuant to which the videotaped statement was introduced in Seever, § 492.304, RSMo 1986, has had significant changes. Section 492.304.1, RSMo 1986, prescribed (as does the current revision of that statute) circumstances in which "visual and aural recording[s] of a verbal or nonverbal statement of a child when under the age of twelve who is alleged to be a victim of an offense under the provisions of chapter 565, 566 or 568, RSMo, is admissible into evidence." One of the circumstances in the version of the statute then in effect required that the child be "available to testify." § 492.304.1(8), RSMo 1986. Section 492.304.2, RSMo 1986, provided that if an electronic recording of the child were admitted into evidence under that section, either party was permitted to call the child to testify and the opposing party could cross-examine the child.

The statute was changed in 1992 by deleting § 492.304.1(8) and subsection 2 of the 1986 revision. New subsections 2 and 3 were enacted and remain in effect. They provide:

2. If the child does not testify at the proceeding, the visual and aural recording of a verbal or nonverbal statement of the child shall not be admissible under this section unless the recording qualifies for admission under section 491.075, RSMo.

3. If the visual and aural recording of a verbal or nonverbal statement of a child is admissible under this section and the child testifies at the proceeding, it shall be admissible in addition to the testimony of the child at the proceeding whether or not it repeats or duplicates the child's testimony.

§ 492.304.2 and .3, RSMo 2000.

In *State v. Silvey*, 894 S.W.2d 662 (Mo. banc 1995), the court clarified the *Seever* constraints observing that "[t]he bolstering [in *Seever*] was improper because it effectively allowed the witness to testify twice." *Id.* at 672. *Silvey* continues, "Section 492.304 allows for the preparation of a videotape in a child sexual abuse case as a quasi-deposition to relate the child's testimony. What *Seever* prohibits is the use of such a videotape to wholly duplicate the live testimony of the child witness." *Id.*

In *State v. Gollaher*, 905 S.W.2d 542 (Mo.App.1995), the Eastern District of this court acknowledged the holding in *Silvey* that the *Seever* prohibition was "the use of videotapes prepared under § 492.304 to 'wholly duplicate' the live testimony of a child witness." *Id.* at 545. *Gollaher* declared:

A child victim's out-of-court statements to third parties possess unique strengths and weaknesses and are distinct evidence from the child victim's trial testimony. *State v. Wright*, 751 S.W.2d 48, 53 (Mo.banc 1988). Statements admitted under § 491.075 do not improperly bolster a victim's live testi-

mony where they are informal and not planned as a substitute for the victim's testimony.[2] *Silvey,* 894 S.W.2d at 672. Such statements, taken as a whole, do not have the effect of allowing the victim to testify twice. *Id.* The statements are not barred by *Seever.*

*Id.* at 546.

The testimony of Ms. Carr concerning her interview with A.H. and A.H.'s statements to her in the course of that interview were Ms. Carr's recollection of A.H.'s statements and the circumstances surrounding that interview. Ms. Carr's testimony supported the consistency of A.H.'s statement. As such, it had probative value apart from A.H.'s out-of-court statement. *State v. Redman,* 916 S.W.2d 787, 792 (Mo. banc 1996). Likewise, the videotaped statement of A.H. was distinct and not a duplicate of A.H.'s trial testimony. The trial court did not abuse its discretion in admitting the evidence about which defendant complains in Point I. Point I is denied.

Point II is directed to testimony by Amanda Pope, A.H.'s teacher at the time she and her mother and sister lived with defendant. Ms. Pope described A.H.'s appearance during the time as "pretty rough," explaining her hair was uncombed and her clothes needed washing. She testified that on some of A.H.'s papers, A.H. would add the initial "S" or the name "Skipper" after her name with a "no" written over the S or Skipper. Ms. Pope said when A.H. was asked why she did this, A.H. said defendant would get mad if she did not use his name but that she did not want to use it. Ms. Pope also testified that on January 26, 2000, A.H. was late for school and it was clear she had been crying; that when Ms. Pope asked her why, A.H. said defendant was mean and that she missed her father.

■ Defendant did not object to the admission of this testimony at trial. Thus, his complaint that it was error to admit the testimony was not preserved for this court's review. *State v. Henderson,* 954 S.W.2d 581, 583 (Mo.App.1997). Defendant asks this court to review the issue raised in Point II for plain error. A review of the record on appeal does not demonstrate a substantial ground for believing the testimony adduced, even if it was admitted in error (a claim this court need not and does not address), constitutes a substantial ground for finding there was manifest injustice or miscarriage of justice. *See* Rule 30.20. This court, therefore, declines to grant plain error review. Point II is denied.

■ Point III also requests plain error review. It is directed to the state's verdict-directing instruction regarding Count II, statutory sodomy in the first degree, Instruction No. 7. Defendant argues Instruction No. 7 was erroneous "because that instruction misstated the definition of deviate sexual intercourse ... in that the definition of deviate sexual intercourse used in Instruction 7 is based on Section 566.010(1) RSMo 2000 instead of RSMo 1994."

Instruction No. 7 directed the jury:

As to Count II if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about the 25th day of January through the 3rd day of Febru-

---

**2.** § 491.075 permits statements by a child under the age of twelve relating to offenses such as the one in this case to be admitted as evidence in criminal proceedings upon the trial court conducting a hearing and making findings on issues delineated in that statute and upon appropriate notice by the prosecuting attorney that the state intends to use such statements. The conditions imposed by § 491.075 were met in this case.

ary, 2000, in the County of Lawrence, State of Missouri, the defendant placed his hand on the genitals *and inserted his finger into the vagina* of [A.H.], and

Second, that such conduct constituted deviate sexual intercourse, and

Third, that at that time [A.H.] was less than twelve years old, then you will find the defendant guilty under Count II of statutory sodomy in the first degree under this instruction.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in the instruction, the term "deviate sexual intercourse" means any act involving the genitals of one person and the mouth, tongue, *hand,* or anus of another person done for the purpose of arousing or gratifying the sexual desire of any person.

(Emphasis added.).

■■■■ Defendant failed to preserve the claim of error he asserts in Point III in that he did not object to Instruction No. 7 as required by Rule 28.03.

Rule 28.03, Missouri Rules of Court (2001), which governs objections to instructions and verdict forms, provides in pertinent part:[3]

Counsel shall make specific objections to instructions or verdict forms considered erroneous. No party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection....

*State v. Johnson,* 95 S.W.3d 221, 225 (Mo. App.2003). A party who fails to object to an instruction as required by Rule 28.03 fails to preserve a claim of error with respect to that instruction for purposes of appellate review. *Id.* Defendant asks this court to grant plain error review of the issues he seeks to raise in Point III regarding Instruction No. 7.

Review of jury instructions for plain error is discretionary. *See State v. Lewis,* 955 S.W.2d 563, 566 (Mo.App.1997). "[U]nless a claim of plain error *facially establishes* substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted,' this Court will decline to exercise its discretion to review for plain error under Rule 30.20." *State v. Brown,* 902 S.W.2d 278, 284 (Mo.banc), *cert. denied,* 516 U.S. 1031, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995)(emphasis added)(quoting Rule 30.20). "For instructional error to rise to the level of plain error, the trial court must have so misdirected the jury as to cause manifest injustice or a miscarriage of justice." *State v. Howard,* 896 S.W.2d 471, 482 (Mo.App.1995).

*State v. Johnson, supra.*

During the period the charged offense was alleged to have occurred, "on or about January 25 through February 3, 2000," the definition of "deviate sexual intercourse" was "any act involving the genitals of one person and the mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person." § 566.010(1).

The definition was changed in 2000 by legislation that inserted the word "hand"

---

**3.** The 2001 Missouri Rules of Court apply in this case in that the trial was conducted in August 2001. Rule 28.03 was adopted in its present form effective July 1, 1995. It has remained unchanged since then.

preceding the words "mouth, tongue ..." in that statute. *See* § 566.010(1), RSMo 2000. That legislation became effective August 28, 2000, after the date of the offense of which defendant was found guilty. A definition from the 2000 revision of the statutes was used in Instruction No. 7, i.e., that "the term 'deviate sexual intercourse' means any act involving the genitals of one person and the mouth, tongue, hand, or anus of another person done for the purpose of arousing or gratifying the sexual desire of any person."

The evidence in this case was that defendant penetrated A.H.'s sex organ with his finger. That evidence was substantial. N.H. testified that she saw defendant do this. A.H. testified at trial that defendant did this. The videotaped recording of Kathy Carr's interview with A.H. corroborated A.H.'s trial testimony.

The definition of deviate sexual intercourse in effect at the time of this offense included "a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person." § 566.010(1). The evidence in the case disclosed this occurred. The jury, per Instruction No. 7, found defendant committed the act described. This court does not find a facial basis to hold that the definition of deviate sexual intercourse used in Instruction No. 7 so misdirected the jury to cause manifest injustice or miscarriage of justice. Plain error review of Point III is not granted. Point III is denied. The judgment is affirmed.

SHRUM, J., and RAHMEYER, C.J., concur.