STATE of Missouri, Respondent,

v.

Chad A. SPRY, Appellant.

No. 28754.

Missouri Court of Appeals,
Southern District,
Division Two.

May 16, 2008.

William J. Swift, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Mary H. Moore, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERT S. BARNEY, Presiding Judge.

Chad A. Spry ("Appellant") appeals his conviction for one count of the Class A felony of assault in the first degree, a violation of section 565.050, and one count of the Class A felony of robbery in the first degree, a violation of section 569.020.[1] Following a jury trial, Appellant was sentenced by the trial court to fifteen years in the Missouri Department of Corrections on each count. In his sole point relied on, Appellant asserts the trial court erred in instructing the jury as to the definition of "serious physical injury."

Appellant does not challenge the sufficiency of the evidence to support his conviction. "Viewing the evidence in the light most favorable to the jury's verdict," *State v. Fry,* 197 S.W.3d 211, 212 (Mo.App.2006), the record reveals that at 7:30 a.m. on August 27, 2006, Deputy Jason Chambers ("Deputy Chambers") responded to a call that a man covered in blood was walking down Newman Road in Jasper County. Deputy Chambers located Christopher Bull ("Victim") "laying face down and the grass was filled with blood...." Deputy Chambers stated that Victim's "pockets were turned inside out ...;" Victim "had what looked to be a chain wallet but the wallet was missing;" and Victim had "major injuries" and "cuts all over his head and face." Victim, who "was kind of in and out of consciousness," was taken by ambulance to a local hospital. At the hospital, Victim's sister told Deputy Chambers she had last seen her brother the previous evening when she had dropped him off at Appellant's house. Apparently, Victim attended a party at Appellant's house with two acquaintances, Eli Smith ("Mr. Smith") and Chuck Tandy ("Mr. Tandy").

When deputies interviewed Appellant at his home, he denied knowing Victim but admitted he had a party at his house the previous evening. Deputies also interviewed a woman who was at the party and she "indicated that there had been an altercation with [Victim and Appellant] the night before and that she had attempted to call 911 and that she was not allowed to" do so by Appellant. Appellant was then advised of his *Miranda*[2] rights and arrested.

---

1. All statutory references are to RSMo 2000.

2. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Appellant thereafter agreed to write a statement for the police. This statement, which was read to the jury and admitted into evidence at trial, stated in part:

I was involved in an assault on [Victim] over the weekend. I attempted to plan to take his money. He had $150.00. I punched him about five times then I proceeded to hold him down while [Mr. Smith] and Denver [Firgens ("Mr. Firgens")] grabbed his money.

The [Victim's] belongings were still at my house when the Sheriffs arrived. . . . [Mr. Smith] helped me put the guy in the trunk. Then him and [Mr. Firgens] dropped him off. When they came back [Mr. Smith] mentioned he had hit him with a cue ball. I didn't realize that [Mr. Firgens] had no money so I yelled at both of them and said: Let's go back. So we all went back to try and find the money. [Mr. Smith] said: I think he's dead. I then went and heard that he was still breathing. We did not find[ ] money so we went back to my house. I threw my shirt out and my shoes in the dumpster. I also cleaned my truck and I believe [Mr. Smith] may have took the missing guitar and backpack. I made $20.00 that I found on the ground. The wallet with no money was also thrown in the dumpster.[3]

Thereafter, while Appellant was incarcerated, he gave a note to the jail personnel in which he requested to speak with the detectives investigating his case. The note was delivered to Detective Lori Peck ("Detective Peck"), who spoke with Appellant on November 6, 2006. After again advising Appellant of his *Miranda* rights, Detective Peck interviewed Appellant about the incident involving Victim. Appellant related to Detective Peck that what happened to Victim was "a party jump" which he planned with Mr. Tandy, Mr. Smith, and Mr. Firgens. Appellant admitted he had used a "cue ball in a Crown Royal bag" to assault Victim. Detective Peck testified that Appellant related "[t]he cue ball was put into the Crown Royal bag and they put [the bag] strings over their wrists to hang on to the bag" and then they would all hit Victim with it. Appellant related that when they returned to where they dumped Victim and discovered Victim was still alive, "Mr. Smith attempted to finish him off by snapping his neck but he wasn't strong enough and so he just got up and stomped his head."

Victim testified that he went to a party at Appellant's house the night before the incident in question. Victim testified people at the party were playing guitar, drinking alcohol and socializing for most of the evening. He related he remembered that at some point Mr. Smith suggested they go for a walk and he recalled walking out the front door, but he did not remember anything else until he woke up the next morning "spitting up blood" on Newman Road.

Further, Victim testified that he suffered severe injuries to his face and continues to have problems with his sinuses and scarring. He is unable to work and suffers from social anxiety due to his injuries.

Tamera Hartzoc, a nurse who treated Victim upon his arrival at the hospital, testified Victim had "blood covering most of his face;" "massive amount[s] of swelling to his face" such that he was unrecognizable; "[m]ultiple lacerations and abrasions to his head;" "spots on his head that looked like there were just chunks of tissue and flesh missing;" "multiple lacerations and abrasions to his back and down both sides of his abdomen;" both his eyes were completely swollen shut and matted with blood; and he had bruising on his

---

3. The actual statement made by Appellant was not included in the record on appeal. We have taken this portion from the transcript.

chest. Likewise, Dr. Curtis Cox ("Dr. Cox") testified he treated Victim's injuries when he arrived at the hospital. Dr. Cox related Victim "had significant trauma about the face and head;" "he had lots of swelling;" was suffering from a concussion; had numerous lacerations to his head, neck and chest; and "fractures of the maxillary sinuses" on both sides of his face as well as other facial bone fractures. Dr. Cox stated Victim would have ongoing medical problems relating to headaches, scarring, vision problems, sinus issues, and post-traumatic stress concerns.

Prior to closing arguments the trial court read Jury Instruction Numbers 3 to 15 to the jury. Included in those instructions was Jury Instruction No. 5, which was "the State's verdict director with accessory liability for Count One for the crime of assault in the first degree." Jury Instruction No. 5, was patterned off of MAI–CR 3d 319.02 (9–1–02) and 304.04 (9–1–03); however, MAI–CR 3d 319.02 (9–1–02) provides for an additional paragraph, defining "serious physical injury," which was not included in Jury Instruction No. 5. The omitted paragraph provides the following: "[a]s used in this instruction the term 'serious physical injury' means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." MAI–CR 3d 319.02 (9–1–02).

Likewise, Jury Instruction No. 8, the State's verdict director for the crime of robbery in the first degree was also read to the jury at that time. Patterned after MAI–CR 3d 323.02 (9–1–03) and 304.04 (9–1–03), Jury Instruction No. 8 also omitted a required paragraph. The omitted paragraph provides the following: "[a]s used in

this instruction the term 'serious physical injury' means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." MAI–CR 3d 323.02 (9–1–03). Note on Use 3 for MAI–CR 3d 323.02 (9–1–03) requires that when the term "serious physical injury" is used "the paragraph defining that term must be used...."[4]

At the end of closing arguments, the trial court made the following announcement to the jury:

> Ladies and gentlemen of the jury, the Court made an error in [Jury Instruction No. 5], which I read to you earlier, in that that instruction should have had in it a definition of the term serious physical injury. That term is defined elsewhere in the instructions but should have also been defined in [Jury Instruction No. 5].
>
> I want to read to you now what the Court has labeled as [Jury Instruction No. 5–A]: As used in [Jury Instruction No. 5–A], the term serious physical injury means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss of impairment of the function of any part of the body.

The following exchange was then held outside the presence of the jury:

> I want to make a record before everybody leaves.
>
> While the Court was reading the instructions specifically, [Jury Instruction No. 7] submitted by [Appellant] as the lesser included instruction I noticed the term of serious physical injury was defined. In looking at the book it should have been defined in [Jury Instruction

---

4. While the term "serious physical injury" was not defined at that time in either Jury Instruction No. 5 or No. 8, it *was* defined in Jury Instruction No. 7, the verdict director for the lesser-included offense of assault in the second degree, MAI–CR 3d 319.12 (9–1–01), which was also read to the jury.

No. 5]. So, while the closing arguments were being delivered the Court came up with an instruction that I've titled [Jury Instruction No. 5–A] which defines serious physical injury. Whether that will pass muster or not, I don't know.[5]

Saliently, no objection was made by Appellant's counsel to the reading of any of the instructions to the jury prior to closing arguments or following the trial court's remarks relating to Jury Instruction No. 5–A.

At the close of all the evidence, Appellant was convicted of the crimes charged and was sentenced as previously set out. This appeal followed.

In his sole point relied on Appellant maintains the trial court erred in failing "to properly instruct the jury before closing arguments as to the definition of 'serious physical injury' as used in both [Jury Instruction No. 5], the verdict director on first degree assault, and [Jury Instruction No. 8], the verdict director for first degree robbery." He asserts "his rights to due process and a fair trial ..." were violated

in that both parties argued to the jury that [Jury Instruction No. 5] and [Jury Instruction No. 8], as previously given to the jury, were the law the jurors were to follow in reaching their verdicts and the court's post closing argument instruction that supplemented only [Jury Instruction No. 5] with [Jury Instruction No. 5–A] defining 'serious physical injury' only served to confuse the jurors because the court told the jurors that the definition of 'serious physical injury' applied only to [Jury Instruction No. 5] and not also to [Jury Instruction No. 8] and further [Appellant] was entitled to have the jurors contemporaneously consider the

closing arguments after having been correctly instructed.

■ As previously related, we observe at the outset there was no objection to the instructions at any time during trial. Further, in his "Motion for Judgment of Acquittal or in the Alternative For a New Trial," Appellant asserted "[t]he trial court erred in correcting [Jury Instruction No. 5] ... by creating [Jury Instruction No. 5–A] defining serious physical injury and not allowing defense counsel an opportunity to object or review the proposed addition to the instruction before it was submitted to the jury." This is not the issue raised before this Court. Furthermore, Appellant did not set out in his motion for new trial any alleged error as it relates to Jury Instruction No. 8, which he also now urges on appeal.

■ Under Rule 28.03,[6]

[c]ounsel shall make specific objections to instructions or verdict forms considered erroneous. No party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.... The objections must also be raised in the motion for new trial in accordance with Rule 29.11.

Rule 29.11(d) requires that "allegations of [instructional] error to be preserved for appellate review must be included in a motion for new trial...." *See State v. Hefflinger*, 101 S.W.3d 296, 301 (Mo.App. 2003). Claims of error not objected to during trial and not presented in a motion for new trial are not preserved for appellate review. *State v. Rios*, 234 S.W.3d 412, 430 (Mo.App.2007).

---

**5.** The trial court made no reference to the fact that Jury Instruction No. 8 also lacked the definition of "serious physical injury."

**6.** All Rule references are to Missouri Court Rules (2007).

Here, Appellant's point is not preserved because, as previously noted, no specific record was made at trial and the allegation relating to Jury Instruction No. 8 was not included in his motion for new trial. Further, Appellant's point is not preserved since his specific objection in his motion for new trial was that the trial court erred in "not allowing defense counsel an *opportunity to object or review* the proposed addition to the instruction before it was submitted to the jury," which is an argument completely different from the one now advanced on appeal. (Emphasis added). The specific argument now presented to this Court was not presented to the trial court either at trial or in Appellant's motion for new trial. Thus, the point is not preserved, and we review only for plain error. *See State v. Goodine,* 196 S.W.3d 607, 618 (Mo.App.2006).

 Plain error review under Rule 30.20 is used sparingly and is limited to those cases where there is a strong, clear demonstration of manifest injustice or miscarriage of justice. *State v. Ballard,* 6 S.W.3d 210, 214 (Mo.App.1999). Claims of plain error are reviewed "under a two-prong standard." *State v. Roper,* 136 S.W.3d 891, 900 (Mo.App.2004). "In the first prong, we determine whether there is, indeed, plain error, which is error that is 'evident, obvious, and clear.'" *Id.* (quoting *State v. Scurlock,* 998 S.W.2d 578, 586 (Mo.App.1999)). "If so, then we look to the second prong of the analysis, which considers whether a manifest injustice or miscarriage of justice has, indeed, occurred as a result of the error." *Id.* If Appellant cannot get past the first step, this Court should refrain from reviewing his claim. *State v. Brown,* 902 S.W.2d 278, 284 (Mo. banc 1995). "A criminal defendant seeking plain error review bears the burden of showing that plain error occurred and that it resulted in a manifest

injustice or miscarriage of justice." *Roper,* 136 S.W.3d at 900. "The outcome of plain error review depends heavily on the specific facts and circumstances of each case." *Id.*

 "'Review of jury instructions for plain error is discretionary.'" *State v. Skipper,* 101 S.W.3d 350, 355 (Mo.App. 2003) (quoting *State v. Johnson,* 95 S.W.3d 221, 225 (Mo.App.2003)).

> Instructional error seldom rises to the level of plain error. To show that the trial court plainly erred in submitting a jury instruction, a defendant must go beyond a demonstration of mere prejudice. In the context of instructional error, plain error results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict, and caused manifest injustice or miscarriage of justice. The defendant bears the burden of showing that plain error has occurred which resulted in manifest injustice or a miscarriage of justice.

*State v. Hibler,* 21 S.W.3d 87, 96 (Mo.App. 2000) (internal citations omitted); *see also Skipper,* 101 S.W.3d at 355 (quoting *Johnson,* 95 S.W.3d at 225) (holding that "'[f]or instructional error to rise to the level of plain error, the trial court must have so misdirected the jury as to cause manifest injustice or a miscarriage of justice'").

In the present matter, the omission of the definition of "serious physical injury" in the verdict directors for assault in the first degree and robbery in the first degree is presumed to be prejudicial error because the MAI–CR 3d and/or the Notes on Use required a definition and none was given by the trial court. *See* MAI–CR 3d 319.02 (9–1–02) and MAI–CR 3d 323.02 (9–1–03); *State v. Thomas,* 75 S.W.3d 788, 791 (Mo. App.2002). However, "[t]he established principles which govern review of an alleged error of omission are that instruc-

tions must be considered together and that absence of language in a particular instruction does not prejudice the defendant if the subject matter is covered and provided elsewhere in the instruction." *State v. Sandles,* 740 S.W.2d 169, 173 (Mo. banc 1987).

Here, the trial court had, prior to closing arguments, instructed the jury in Jury Instruction No. 7, the verdict director for the lesser-included offense of assault in the second degree, MAI–CR 3d 319.12 (9–1–02), as to the definition of "serious physical injury." Accordingly, when viewing the instructions as a whole, the omissions of a definition of "serious physical injury" in Jury Instructions No. 5 and No. 8 did not rise to the level of plain error requiring reversal, because the jury had been instructed as to the proper definition of "serious physical injury" in a different instruction. *Sandles,* 740 S.W.2d at 173.

Additionally, the trial court remedied its omission, in part, by orally giving the jury Jury Instruction No. 5–A which specifically set out the definition of "serious physical injury."

We disagree with Appellant's arguments that he was prejudiced because both the State and his counsel "highlight[ed]" the importance of Jury Instructions No. 5 and No. 8, such that "[t]he jury may very well have been adversely influenced by the error[s]," and that Jury Instruction No. 5–A "exacerbated" the jury's confusion. "This speculative argument disregards that the jury was fully and appropriately instructed" based on the totality of the instructions given to it and "Missouri courts properly refuse to find instructions prejudicially erroneous if the alleged errors are 'no more than speculation.'" *Sandles,* 740 S.W.2d at 173 (quoting *State v. Wood,* 662 S.W.2d 876, 878 (Mo.App.1983)).

Here, Appellant has not shown that plain error has occurred resulting in manifest injustice or a miscarriage of justice.

*Hibler,* 21 S.W.3d at 96; *Skipper,* 101 S.W.3d at 355. Point denied.

 Lastly, in our review of the record in this case, it has come to our attention that the trial court's "Judgment" states this matter was disposed of by "Guilty Plea" on October 1, 2007, as opposed to being disposed of by jury verdict. It is apparent that the "failure to memorialize accurately the decision of the trial court [and jury] as it was announced in open court [and demonstrated by the record] was clearly a clerical error." *State v. Taylor,* 123 S.W.3d 924, 931 (Mo.App.2004). "Rule 29.12 permits a trial court to correct such clerical errors in the judgment that obviously are a result of oversight or omission." *State v. Booyer,* 87 S.W.3d 926, 931 (Mo.App.2002). Accordingly, we remand this case with instructions to the trial court to enter a written judgment and sentence reflecting the fact that Appellant was convicted by a jury instead of pleading guilty. In all other respects, the judgment of the trial court is affirmed.

RAHMEYER, J., and LYNCH, C.J., concur.